IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:17-cv-708

| | |
|---|---|
| GRADY ALDRIDGE, G.A, by his next friend RENEE ALDRIDGE, and M.A., by her next friend RENEE ALDRIDGE, <br><br> Plaintiffs, <br><br> v. <br><br> CAROWINDS LLC , <br> CEDAR FAIR SOUTHWEST INC., and <br> CEDAR FAIR ENTERTAINMENT <br> COMPANY, M.L.P., <br><br> Defendants. | COMPLAINT <br> (Jury Trial Requested) |

## INTRODUCTION

In 2016, Plaintiff Grady Aldridge and his wife purchased Carowinds season tickets for their family. During the family's first visit, Carowinds denied them access to at least twelve rides. On the family's second visit, Carowinds denied them access to at least eight rides, and then later in the day, increased the number of prohibited rides to at least twenty-eight. Mr. Aldridge returned to Carowinds a third time and was again denied access to at least twenty-eight rides at Carowinds. Plaintiffs were denied access based on speculation, stereotypes, and generalizations about their ability to safely enjoy different rides as individuals with lower leg amputations, and not because of legitimate safety requirements. Defendants illegally discriminated against Plaintiffs based on their disability. Plaintiffs desire to return to Carowinds and to enjoy any rides which they are safely able to enjoy.

## JURISDICTION AND VENUE

1. This action is brought under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189.

2. Plaintiffs' action for disability discrimination is authorized by 42 U.S.C. § 12188.

3. This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

4. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 & 2202, 42 U.S.C. §12188(a), Fed. R. Civ. P. 65.

5. Venue is proper because the actions and omissions of which Plaintiffs complain occurred in this district. *See* 28 U.S.C. § 1391(b).

## PARTIES

6. Grady Aldridge is a U.S. citizen and resident of Clover, South Carolina.

7. G.A. is a U.S. citizen, and resident of Clover, South Carolina. He is 5 years old; Renee Aldridge is his mother and maintains this action on his behalf.

8. M.A. is a U.S. citizen, and resident of Clover, South Carolina. She is 10 years old; Renee Aldridge is her mother and maintains this action on her behalf.

9. Mr. Aldridge, G.A., and M.A. were born without shin bones. Each has had both legs amputated at the knee in a procedure known as a bilateral knee disarticulation.

10. Plaintiffs are substantially limited in walking and are individuals with disabilities.

11. Plaintiffs use wheelchairs for assistance with mobility. Each is able to sit upright in a wheelchair without assistance from seat belts or other mechanical restraints.

12. Mr. Aldridge possesses prosthetic legs, but no longer utilizes them for mobility.

13. G.A. has prosthetic legs and frequently utilizes them for mobility.

14. M.A. does not have prosthetics.

15. Cedar Fair Entertainment Company, M.L.P. is a publicly-traded company based in Ohio that owns the Carowinds amusement park.

16. Cedar Fair Southwest Inc. is a corporation formed in Delaware and registered with the North Carolina Secretary of State. Upon information and belief, it participates in the operation, management, and/or ownership of Carowinds.

17. Carowinds LLC is an entity formed in Delaware and registered with the North Carolina Secretary of State. Upon information and belief, it participates in the operation, management, and/or ownership of Carowinds.

18. The Carowinds amusement park is located in both Charlotte, North Carolina and Fort Mill, South Carolina.

## FACTS

19. Carowinds is an amusement park offering more than fifty rides.

20. In 2016, Mr. Aldridge and his wife purchased Carowinds season passes for themselves and their children, including M.A. and G.A.

21. Plaintiffs paid the same price for their season passes that people without disabilities pay.

Guest Assistance Guide ("Guide")

22. Carowinds publishes rider qualifications for its rides in the Guide.

23. According to the 2016 Guide, Mr. Aldridge was allowed to ride fewer than half of the rides offered.

24. Carowinds relies on height to determine a guest's level of maturity and eligibility to ride certain attractions. Depending on how Carowinds calculates the height of guests with amputations, M.A. and G.A. are eligible to ride some or all of the rides Mr. Aldridge is eligible to ride.

25. Upon information and belief, Carowinds' rider qualifications are not individualized to each ride and include unnecessary qualifications.

26. For example, the rider qualifications for the Yo-Yo, a free-hanging swing ride, include a requirement that riders have a minimum of three functioning extremities and the ability to brace themselves.

27. The Yo-Yo has riders sit in seats with their legs dangling. Riders hold on to the metal arms of the seat or the metal suspension cables, have their hands in the air, or on their laps; notably absent is a solid surface against which riders could brace themselves.

28. Charlie Brown's Wind-up is a free-hanging swing ride for children that is very similar to the Yo-Yo.

29. The rider qualifications for Charlie Brown's Wind-up also require that riders have a minimum of three functioning extremities and the ability to brace themselves despite the lack of solid surfaces against which a rider could brace themselves.

30. On information and belief, other rides have unnecessary rider qualifications.

31. Carowinds denied Plaintiffs access to rides based on what appear to be unnecessary rider qualifications because they are individuals with disabilities.

Ride Admission Policy Guest Form ("Rider Form")

32. When people with disabilities enter Carowinds, they are directed to stop by guest services to obtain a Rider Form, a document that purports to establish which attractions the guest meets the rider qualifications to ride.

33. Plaintiffs visited Carowinds on June 4th and 8th, and Mr. Aldridge visited alone on June 9th, 2016. Rider Forms were obtained during each visit.

34. The Rider Forms were not consistent from visit to visit.

35. For example, on June 4th and the first part of June 8th, Plaintiffs were permitted to ride Drop Tower and Lucy's Crabbie Cabbie. During the second half of June 8th and on June 9th, Plaintiffs were excluded from these rides.

36. It is unclear whether the Rider Forms are filled out based on the rider guidelines in the Guide or based on some other criteria.

37. Carowinds excluded Plaintiffs from Drop Tower, Scrambler, Slingshot, Yo-Yo, Afterburn, Carolina Goldrusher, Fury 325, Hurler, Intimidator, Lucy's Crabbie Cabbie, Woodstock Express, and Woodstock Gliders when Plaintiff met the rider guidelines to ride these rides according to the Guide.

38. Carowinds denied Plaintiffs access to rides they are qualified to ride because they are individuals with disabilities.

Plaintiffs' June 4th Carowinds Visit

39. The family's first visit to Carowinds in 2016 was on June 4th. They were celebrating G.A.'s birthday and were accompanied by family friends.

40. Upon entering Carowinds on June 4th, the family went to Guest Services to obtain Rider Forms for Mr. Aldridge, M.A., and G.A.

41. It took almost two hours for Carowinds to issue Rider Forms to Plaintiffs.

42. Mr. Aldridge has visited Carowinds multiple times over many years, and has worked at Carowinds intermittently since he was a teenager. As of June 2016, he had ridden almost every ride in the park except those currently known as Intimidator, Plants vs. Zombies, Windseeker, and Fury 325.

43. It was G.A. and M.A.'s first trip to Carowinds.

44. Mr. Aldridge was surprised to see that the Rider Forms excluded Plaintiffs from rides he had ridden before, but he did not address the issue because he and his family were anxious to start enjoying their day at Carowinds.

45. The family chose Peanuts Pirates as their first ride. The Rider Forms indicated that Plaintiffs were eligible to ride Peanuts Pirates because each has "two functioning arms…[and] a normal center of gravity and the lower extremities are sufficiently strong to maintain proper riding posture under the dynamic conditions of the ride."

46. Ms. Aldridge, G.A., M.A., and another family member approached Peanuts Pirates, but were told by Carowinds staff that it was not safe for G.A. and M.A. to ride Peanuts Pirates.

47. A supervisor was called to the ride to resolve the discrepancy between the Rider Form and the Carowinds staff's assertion that M.A. and G.A. could not ride Peanuts Pirates.

48. The supervisor told the ride operator that it was safe for M.A. and G.A. to ride Peanuts Pirates, and assured Ms. Aldridge that she would speak with other ride staff to ensure they would not experience any further situations such as this one.

49. After completing the ride on Peanuts Pirates, Ms. Aldridge and G.A. next got on the Character Carousel. G.A. sat astride one of the horses with Ms. Aldridge's assistance.

50. Carowinds staff approached Ms. Aldridge and explained that G.A. could not ride in this manner and asked them to exit the ride.

51. Ms. Aldridge observed an infant nearby who was sitting astride a carousel horse with a woman's assistance and did not see any Carowinds staff approach this woman and ask her to move. She did not understand why G.A. was not permitted to ride astride one of the Carousel horses.

52. After their experiences at the Peanuts Pirates and Carousel rides, the Aldridges left Carowinds.

Plaintiffs' June 8th Carowinds Visit

53. The Aldridge family returned to Carowinds on June 8, 2016.

54. They went to guest services and obtained their Rider Forms.

55. The Rider Forms issued for Mr. Aldridge and M.A. were identical.

56. For unknown reasons, Carowinds did not issue G.A. a separate Rider Form. Mr. Aldridge was told at one point by Carowinds staff that they did not need separate Rider Forms for each family member.

57. The Rider Forms permitted Plaintiffs to ride a greater number of rides than Plaintiffs were permitted to ride under the Rider Forms issued on June 4th.

58. The June 8th Rider Forms also excluded Plaintiffs from rides they were previously permitted to ride on June 4th, such as Woodstock Gliders.

59. The family selected Rip Roarin' Rapids as their first ride because it is located near guest services. The Rider Forms did not indicate any restrictions on Plaintiffs enjoying the ride.

60. Mr. Aldridge has ridden Rip Roarin' Rapids in the past, with and without his prosthetics.

61. Shortly after checking in with the ride attendant, Mr. Aldridge and his family were directed to the accessible entrance.

62. The accessible route to Rip Roarin' Rapids leads to a side door, through which is the accessible boarding area. Once through the door, guests are in a dock area where riders disembark from the ride. Riders with disabilities board the ride at this point and travel with the ride to the general boarding area where riders without disabilities then board the ride.

63. When the Aldridges entered the accessible boarding area, the ride operators began to argue audibly about whether Plaintiffs should be permitted to ride. One operator said they should follow the Rider Form permitting the Plaintiffs to ride, the other said that the Plaintiffs did not meet the criteria for the ride notwithstanding the Rider Form.

64. One of the ride operators called for security. A supervisor was also called over. The supervisor admonished the ride operator for calling security as there had been no threats of violence or other reason for their presence.

65. The conversation between the ride operator, the supervisor, and the Aldridge family took place in the accessible boarding area of Rip Roarin' Ride Rapids, within earshot and in full view of other park guests.

66. Ultimately, Plaintiffs were told they could not ride Rip Roarin' Rapids. The remaining family members elected not to ride Rip Roarin' Rapids without Plaintiffs.

67. Carowinds issued new Rider Forms for Plaintiffs as they prepared to leave Rip Roarin' Rapids. By this time, it had been about two hours since the Aldridges tried to board Rip Roarin' Rapids.

68. The second set of Rider Forms issued on June 8th was radically different from the first set. Whereas Plaintiffs were permitted to ride thirty rides when they entered the park, now they could only ride ten.

69. The second set of Rider Forms issued on June 8th were also radically different from the ones issued on June 4, 2016.

70. On June 4th, Plaintiffs were allowed to ride all but one of the rides in Planet Snoopy (the children's section of Carowinds); on June 8th, Plaintiffs were only permitted to ride four of the thirteen Planet Snoopy rides.

71. It is unclear what criteria Carowinds staff relied upon in creating either set of Rider Forms issued to Plaintiffs on June 8th.

Mr. Aldridge's June 9th Carowinds Visit

72. On June 9, 2016, Mr. Aldridge entered Carowinds on his own. His goal was to get clarification about the rides Plaintiffs would be permitted to ride.

73. He was issued a Rider Form prohibiting him from riding all but ten rides; it appeared identical to the second Rider Form from the day before (June 8th).

74. Among the rides Mr. Aldridge was excluded from on June 9th were ride Afterburn, Intimidator, and Fury 325.

75. The Guide states that guests with amputations at the knee meet the rider qualifications to ride Afterburn, Intimidator, and Fury 325 if they are using a separate three-point harness.

76. Mr. Aldridge asked why he was not permitted to ride the Afterburn, Intimidator, and Fury 325 using a chest harness as a reasonable modification of the ride restraint system; he was told it was because he did not have knees.

77. Mr. Aldridge advised Carowinds staff that his amputation is *at* the knee, but to no avail.

78. Upon information and belief, Carowinds does not rely on appropriate standards or criteria for assessing whether an individual with a disability can safely enjoy its rides.

79. Upon information and belief, Plaintiffs have been excluded from other rides they would be eligible to enjoy but for Defendants' refusal to make reasonable modifications to the rides.

2017 Guest Assistance Guide ("2017Guide")

80. Upon information and belief, the 2017 Guide did not meaningfully alter ride guidelines.

81. The primary changes reflected in the 2017 Guide appear to be the addition of ride guidelines for four newly opened attractions in the "County Fair" section of the park,

including the Electro-Spin, the Zephyr, the Rock N Roller, and the Do-Si-Do. It also reflects the renaming of the Carolina Cobra as the Flying Cobras.

82. Plaintiffs would like to return to Carowinds and enjoy access to all rides they can safely enjoy.

## CLAIM FOR RELIEF
(Title III of the Americans with Disabilities Act)

83. Plaintiffs adopt and restate the allegations set forth in paragraphs 1 – 82.

84. Defendants own and operate a place of public accommodation. *See* 42 U.S.C. § 12181(7)(I).

85. Title III of the ADA prohibits amusement parks from discriminating on the basis of disability. 42 U.S.C. § 12182.

86. Prohibited discrimination includes denying individuals with disabilities equal access to amusement park rides unless doing so poses a direct threat to the health or safety of others. *See* 42 U.S.C. §12182(b)(1)(A)(i) & (b)(3).

87. Amusement parks cannot impose unnecessary eligibility criteria to deny individuals with disabilities the opportunity to ride amusement park rides. *See* 42 U.S.C. § 12182(b)(2)(A)(i).

88. Amusement parks cannot deny individuals with disabilities equal access to amusement park rides by refusing to make reasonable modifications that would permit them to ride amusement park rides. *See* 42 U.S.C. § 12182(b)(2)(A)(ii).

89. Plaintiffs are individuals with disabilities who are substantially limited in the major life activity of walking.

90. Defendants' exclusion of Plaintiffs from rides they met the published rider qualifications to enjoy discriminated against Plaintiffs based on disability.

91. Upon information and belief, Carowinds' rider guidelines do not correspond to the physical requirements of each particular ride; Defendants' reliance on unnecessary eligibility criteria to exclude Plaintiffs from rides discriminated against them based on disability.

92. Defendants discriminated against Plaintiffs by failing to make reasonable modifications that would permit Plaintiffs equal access to additional rides.

93. Defendants denied Plaintiffs equal access to Carowinds rides based on their disability.

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the following relief:

1. Declare that Defendants' actions, policies, procedures and practices as alleged herein violated the Americans with Disabilities Act.

2. Enjoin Defendants' continuing violations of the Americans with Disabilities Act.

3. Award Plaintiffs the costs of this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 12205.

4. Afford Plaintiffs a trial by jury on all issues so triable.

5. Provide such other and further relief as the Court deems to be just and equitable.

Dated: December 6, 2017    Respectfully submitted,

DISABILITY RIGHTS NC

/s/  Holly Stiles
Holly Stiles
holly.stiles@disabilityrightsnc.org
N.C. State Bar No. 38930
3724 National Drive, Suite 100
Raleigh, NC  27612
Phone: (919) 856-2195
Fax:    (919) 856-2244

ATTORNEYS FOR PLAINTIFFS